UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:22-cr-197-KKM-AEP

MARK ANTHONY PETERSON

**UNITED STATES' SENTENCING MEMORANDUM**

The United States files this sentencing memorandum to request that this Court sentence the defendant to the guideline term of 600 months (50 years). In support thereof, the United States submits as follows:

I. **Background**

On June 1, 2022, Mark Anthony Peterson ("Peterson") was indicted by a federal grand jury on a four-count Indictment charging him with production of child pornography, in violation of 18 U.S.C. § 2251(a), enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b), and one count of distribution and one count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2). Doc. 1. On May 23, 2023, Peterson pled guilty to Counts One and Three of the Indictment (production and distribution of child pornography). Doc. 44-49. The Court scheduled sentencing for November 13, 2023. Doc. 65.

II. **Presentence Investigation Report**

On October 30, 2023, U.S. Probation issued its Final Presentence Investigation Report ("PSR"). Doc. 66. It determined the defendant's applicable guidelines range for the underlying offenses as life imprisonment. As the statutorily authorized

1

maximum sentences are less than the minimum of the applicable guideline range, the guideline term of imprisonment is 600 months. PSR ¶ 80. Probation reached this calculation based on a total offense level of 43 and a criminal history category of I[1]. *Id*. As to Count One the Indictment, the defendant is subject to a minimum term of imprisonment of 15 years and a maximum of 30 years. PSR ¶ 79. As to Count Three, the defendant is subject to a minimum term of imprisonment of 5 years up to 20 years. *Id*. The defendant is also subject to a term of supervised release of five years to life. PSR ¶ 84.

The Court should sentence the defendant to 50 years as his conduct, taken with the sentencing factors set forth in 18 U.S.C. § 3553(a), demands this sentence. The defendant poses an extraordinary danger to children in the community and that danger is unlikely to abate over time.

### III.     Argument for a Guideline Sentence

The Supreme Court has declared, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United Sates*, 522 U.S. 38, 41 (2007). Although a sentencing court may not presume that a guideline-range sentence is reasonable, the Sentencing Guidelines remain a significant and pivotal component of the sentencing process. The Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors,

---

[1] An offense level of more than 43 is to be treated as an offense level of 43. USSG Ch. 5, Pt. 1, comment (n.2).

18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009). Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in § 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other corrective treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). The defendant's conduct, considered in conjunction with the sentencing factors set forth, calls for a high-end guide-line sentence.

### A. Nature and Circumstances of the Offense

The nature and circumstances of this defendant's offense conduct exhibits the egregious exploitation of those who could not defend themselves: children. Between 2017 and 2018, when Peterson was 24 years old and the victim was 16 years old, Peterson engaged in a manipulative, exploitive relationship with the victim. Peterson expressed knowledge that the victim was underage, but still coerced and enticed the victim to send sexually explicit images and videos of herself. Peterson also threatened self-harm as a means of pressuring the victim into continued communications. See PSR ¶ 16-17. For example, Peterson messaged the victim statements such as: "I just want your love…I just want YOU. Even if I have to die for you." The impact of

Peterson's statements on the victim is demonstrated by some of her statements to Peterson: ""I'm in high school. Okay? I want freedom. I feel like a criminal for wanting to be a normal teenage girl" and "do you want to know why I'm afraid to date you? because you tell me if I leave you'll kill yourself." The victim ultimately sent Peterson multiple images and videos sexual in nature. In the victim's forensic interview, which took place when she was 19 years old, she stated she felt "brainwashed" by Peterson and explained how she ultimately blocked him from all her social media accounts.

Peterson's behavior targeting minors was not limited to his interactions with the victim. Between June and September 2020, through the social media application Discord, Peterson shared approximately 33 images of child sexual abuse material with another discord user, including diaper-aged toddlers. PSR ¶ 18. In May 2021, a search warrant was executed at Peterson's residence. Ultimately, law enforcement recovered 104 images and 112 video files of the victim, as well as 20 videos and 13 images of child sexual abuse material, that Peterson sent or received using discord. PSR ¶ 23.

Peterson's offense conduct went on for years, targeting minors. His predatory behavior is a danger to the community, necessitating the guideline sentence.

Although this Court must consider other factors beyond the defendant's offense conduct, this Court should nonetheless give significant weight to his offense conduct in crafting his sentence here. *See, e.g., United States v. Croteau*, 819 F.3d 1293, 1309 (11th Cir. 2016) ("The weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court.").

### B. History and characteristics of the defendant

Peterson's history and characteristics also weigh strongly in favor of a guidelines sentence. Peterson's statements to probation regarding being a caretaker for family members was disputed by his stepmother. In short, there are no life circumstances present to mitigate the defendant's behavior. A term of 50 years imprisonment is not unreasonable to address to the harm Peterson is capable of inflicting on the community.

In addition to the offense conduct, Peterson was accused of sexually assaulting two of his younger, female cousins, who resided in his home. This was documented in several Hillsborough County police reports and reported by his cousins in forensic interviews. Both cousins detailed that both Peterson and Peterson's brother would hide their cellphones in the bathroom ceiling to record them. One cousin detailed that Peterson would touch her vagina over her clothes, when she was around 10 or 11 years old, and that eventually, he also touched her underneath her clothing. A Hillsborough police report in 2013, corroborated that Peterson's cousin ran away from home in 2013 due to the abuse. She was approximately 14 years old at the time and Peterson was 20 years old. In 2017, this cousin told a school resource officer that Peterson touched her under her clothing at night and that the abuse had been on-going for years. Ultimately no charges were ever filed by the State. After the execution of the federal search warrant in 2021, videos and images depicting Peterson's cousins in the bathroom, consistent with their allegations, were located on electronic devices in the home.

### C. Seriousness of the crime and impact on the victims

All child pornography is inherently violent, in that it depicts the rape of non-consenting children. Indeed, every image of child pornography represents a victim who has been abused, exploited and raped. "Child sex crimes are among the most egregious and despicable of societal and criminal offenses…" *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009) (discussing how courts have upheld lengthy sentences in cases involving child sex crimes as substantively reasonable). Congress has expounded that the "just deserts" concept in sentencing is a means of reflecting the "gravity of the defendant's conduct," as well as the "harm done or threatened by the offense."   S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59As the Supreme Court has recognized, "[t]he distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children …. [T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation..." *New York v. Ferber*, 458 U.S. 747, 758–59 nn. 9–10 (citations omitted).

Peterson pled guilty to producing child sexual abuse material and distributing sexual abuse material. The emotional and physical toll of that abuse is best described in the victims' own words, and in the reports provided to the Court as part of the final presentence report. *See* PSR pgs. 42-44 specifically for victim impact statement. A guidelines sentence of 50 years is necessary to recognize the victims harmed by the defendant's conduct and to restore public confidence in our laws protecting children.

### D. Promoting respect for the law

This Court's sentence must reflect the need to "promote respect for the law." 18 U.S.C. § 3353(a)(2)(A). When Congress passed the Protection of Children against Sexual Exploitation Act of 1977, it sought to address the organized, nationwide child pornography industry that was generating millions of dollars through the exploitation of children. S. REP. 95-438, 5, 1978 U.S.C.C.A.N. 40, 42-43. The Act was aimed at filling a void in federal law by targeting the production of materials depicting child abuse. S. REP. 95-438, 5, 1978 U.S.C.C.A.N. at 56. But the Act, and its later amendments, are more than prophylactic measures. They reflect value judgments and accept moral norms of our society. As one Senate Judiciary Committee report concluded: "the use of children…as the subjects of pornographic materials is very harmful to both the children and the society as a whole," describing the conduct as "outrageous." S. REP. 95-438, 5, 1978 U.S.C.C.A.N. at 43. Indeed, child sexual abuse "is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional and sexual development in ways which no just or humane society can tolerate." *See Kennedy v. Louisiana*, 554 U.S. 407, 468 ((Alito J., joined by Roberts, C.J., Scalia, and Thomas, JJ., dissenting) (quoting C. Bagley & K. King, Child Sexual Abuse: The Search for Healing 2 (1990)). Colborn's actions violated federal law, but they also transgressed accepted social norms that undergird our laws. His conduct was unnatural, morally repugnant, and incompatible with a well-ordered society. This Court's sentence must express an appropriate level of social condemnation of his crime.

### E. The need for a just punishment

"Retribution is a valid penological goal." *Glossip v. Gross*, 135 S. Ct. 2726, 2769 (2015) (Scalia, J. concurring). As the Eleventh Circuit explained in *U.S. v. Irey,* 612 F.3d 1160, 1206 (11th Cir. 2010): "the greater the harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime." 612 F.3d at 1206. Punishment is the way in which society expresses denunciation of wrongdoing, and it is thus essential that this Court promote and maintain respect for the law by pronouncing sentences that fully reflect society's revulsion. *See Gregg v. Georgia*, 428 U.S. 153, 184 n. 30 (1976) (citing Royal Commission on Capital Punishment, Minutes of Evidence, Dec. 1, 1949, p. 207 (1950)). "Child sex crimes are among the most egregious and despicable of societal and criminal offenses…" *U.S. v. Sarras*, 575 F.3d 119, 1220 (11th Cir. 2009) (discussing how courts have upheld lengthy sentences in cases involving child sex crimes as substantively reasonable). Here, the seriousness of the crimes, taken with the need for just punishment and the goal of promoting respect for the law, weigh heavily in favor of a high-end guidelines sentence.

### F. Adequate deterrence and the need to protect the public

Deterrence is especially important for crimes involving the sexual abuse of children, including child pornography. *See United States v. Goldberg*, 491 F.3d 668 (7th Cir. 2007). "Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor." *See id*.

The Supreme Court has noted "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class..." *Smith v. Doe*, 538 U.S. 84, 103 (2003). Peterson fits well-within that class. As this Circuit recognized in *Irey*, research in this field is "consistent with what judicial decisions show: pedophiles who have sexually abused children are a threat to continue doing so, and age does not remove the threat." 612 F.3d at 1214 (citing various studies and reports); *see also Pugh*, 515 F.3d 1179, 1201 (11th Cir. 2008) ("sex offenders have appalling rates of recidivism and their crimes are under-reported."); *United States v. Allison*, 447 F.3d 402, 405–06 (5th Cir. 2006) ("Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders.").

The Eleventh Circuit Court of Appeals has affirmed lengthy sentences for conduct bearing resemblance to Peterson's. In *United States v. Huskey*, the Eleventh Circuit affirmed a 70-year sentence for a defendant who, beginning when his daughter was six-years old and continuing for three years, engaged in anal, oral, and vaginal sex with her, also penetrating her with objects. 349 F. App'x 495, 496 (11th Cir. 2009). *Huskey* is merely one example of the Eleventh Circuit rejecting reasonableness challenges to life and natural life sentences for conduct resembling Peterson's. *See, e.g.*, *United States v. Foster*, 209 Fed. Appx. 942 (11th Cir. 2006) (affirming life sentence for defendant with criminal history category I, who during a 4-year period engaged in oral and vaginal sex with a single victim, his daughter, who was less than 12-years old when the abuse began).

Indeed, the Eleventh Circuit has consistently upheld life and natural life sentences for similarly egregious conduct. For example, in *United States v. Sarras*, the Eleventh Circuit affirmed as substantively reasonable a 100-year sentence where the defendant had several sexual encounters with a single 13-year-old girl for roughly one year and took explicit photographs of her. *See* 575 F.3d 1191, 1220 (11th Cir. 2009). In *United States v. Johnson*, the Eleventh Circuit upheld as reasonable a 140–year sentence where the defendant, with a criminal history category of I, abused and photographed three boys—Victim 1, from 8–15 years old, Victim 2, from 14–16 years old, and Victim 3, from 13–14 years old. *See* 451 F.3d 1239, 1244 (11th Cir. 2006); *see also United States v. Kapordelis*, 569 F.3d 1291, 1318–19 (11th Cir. 2009) (upholding as reasonable a 420-month sentence, which represented an upward variance, where defendant engaged in a pattern over many years of molesting young teenaged boys and taking photographs of them).

This Court should also impose a guidelines sentence to send a strong warning to other individuals currently involved in or considering similar conduct. *See Irey, 612 F.3d at 120*8 ("There is another aspect of the compounding harm that the production and distribution of child pornography inflicts. It may incite or encourage others to sexually abuse children."). A guidelines sentence of life is necessary to convey that the federal Court system finds this conduct unconscionable and will impose heavy penalties to protect the most vulnerable amongst us.

IV. **Conclusion**

This Court should sentence Peterson to a guideline guidelines sentence of 50 years imprisonment. Nothing in the offense conduct or the defendant's history and characteristics warrants a downward departure or variance. A guidelines sentence is the only reasonable sentence because it is the only sentence that reflects the seriousness of the defendant's crimes and relevant conduct, provides just punishment, fully protects children in the community, and promotes respect for the law.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By: */s/ Ilyssa M. Spergel*
Ilyssa M. Spergel
Assistant United States Attorney
Florida Bar No. 0102856
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602
Telephone: (813) 274-6300
Facsimile: (813) 274-6178
E-mail: ilyssa.spergel@usdoj.gov

U.S. v. Mark Anthony Peterson          Case No. 8:22-cr-197-KKM-AEP

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

>  /s/ Ilyssa M. Spergel
> Ilyssa M. Spergel
> Assistant United States Attorney
> Florida Bar No.
> 400 N. Tampa Street, Ste. 3200
> Tampa, FL 33602
> Phone: (813) 274-6000
> Fax: (813) 274-6103
> Email: ilyssa.spergel@usdoj.gov